UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOCHAIN INSTITUTE, INC., <br> Plaintiff, <br> v. <br> EPIGENOMICS AG, et al., <br> Defendants. | Case No. 19-cv-02120-JSW <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** <br> Re: Dkt. No. 13 |

Now before the Court for consideration is the motion for a preliminary injunction filed by Plaintiff BioChain Institute, Inc. ("Plaintiff"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and the parties' arguments at the hearing. The Court HEREBY DENIES Plaintiff's motion.

**BACKGROUND**

Plaintiff and Epigenomics AG ("Defendant") entered into an agreement (the "Agreement"), dated October 27, 2013, under which "Epigenomics provided an exclusive license to [Plaintiff] to develop, obtain regulatory approval, and commercialize certain products in China," which consist of what is described in the Complaint as the "Septin9 marker" and "Epi proColon, a blood test for colorectal cancer detection."[1] BioChain Beijing Science & Technology, Inc. ("BioChain Beijing") is listed as an affiliate of Plaintiff with rights to license the technology in the Agreement. (Compl. ¶¶ 1, 9, 14; Dkt. No. 14-1, Declaration of Tina V. Ngo, ¶ 2, Ex. A

---

[1] Plaintiff alleges that it refers to Defendant and named co-defendant, Epigenomics, Inc., collectively as "Defendants." (Compl. at 2:1-3.) It does not explain whether, when it refers to "Epigenomics", it also intended to refer to each entity or whether the use of "Epigenomics" refers solely to Defendant.

1

(Agreement, Art. 1.2); Declaration of Grace Tian Serri ("Tian Serri Decl."), ¶ 4.)[2]

The Agreement provides that it "shall be governed by and construed in accordance with the laws of Germany, without regard to the conflicts of law principles thereof." (Agreement, Art. 16.2.) It also contains confidentiality provisions that Plaintiff alleges "prohibits Epigenomics from making any public announcement or other publication concerning the Agreement without" Plaintiff's prior written permission. (Compl. ¶ 10; *see also* Agreement, Art. 10.) The Agreement also contains a dispute resolution provision, which requires mediation and, if mediation is not successful, arbitration. (Compl. ¶ 11; Agreement, Art. 16.3.)

On January 18, 2019 "Epigenomics wrote a letter to [Plaintiff] indicating its intent to terminate the Agreement 45 days after delivery of the letter." (Compl., ¶ 12; Tian Serri Decl., ¶ 9, Ex. A.) On February 15, 2019, Plaintiff responded through outside counsel, and disputed Defendant's right to terminate the Agreement. (Compl. ¶ 13; Tian Serri Decl., ¶ 10, Ex. B. )

On February 28, 2019, Plaintiff initiated mediation proceedings pursuant to the terms of the Agreement (the "ADR proceedings"). (Compl. ¶¶ 16-24; Tian Serri Decl., ¶ 11, Ex. C.) Under the Agreement, "if the dispute has not been settled pursuant to [the WIPO] rules within sixty (60) days following the filing of a request for mediation or within such other period as the Parties may agree in writing, either party may submit the dispute to final and binding arbitration." (Agreement, Art. 16.3.2.) At the hearing the parties represented they still are engaged in mediation and that no arbitration has been initiated. They also represented that Plaintiff could seek interim injunctive relief from the arbitrator(s).

On March 21, 2019, Plaintiff filed a complaint in the Superior Court of the State of California, County of Alameda asserting claims for declaratory relief and breach of contract against Defendant and Epigenomics, Inc. Defendant is German corporation, with its principal place of business in Berlin, Germany. (Compl. ¶ 7; Notice of Removal ¶ 7.) Plaintiff is a California corporation with its principal place of business in Newark, California. (Compl. ¶ 6;

---

[2] The Tian Serri declaration is attached as Exhibit 1 to the Declaration of Peter K. Huston ("Huston Decl.").

2

Notice of Removal ¶ 7.) Epigenomics, Inc. is a Washington corporation with its principal place of business in San Diego, California. (Compl. ¶ 4 (alleging Epigenomics, Inc. is "headquartered" in California); Notice of Removal, ¶ 7.) Plaintiff does not allege that Defendant and Epigenomics Inc. are alter-egos.

In its breach of contract claim, Plaintiff alleges that Defendant "breached the Agreement by announcing via press release that it had decided to immediately terminate its licensing agreement with" Plaintiff. In that announcement, Defendant stated it had terminated the Agreement because Plaintiff had not paid "more than the contractually agreed minimum royalties over a period of three years," and that it would "evaluate all options for the distribution of [the product] in China to maximize the full potential of the test in this key market." Plaintiff alleges "Epigenomics" did not obtain Plaintiff's permission before issuing that statement. (Compl. ¶¶ 14-15, 26-27; Tian Serri Decl., ¶ 12, Ex. D ("Announcement").) Defendant attests that the Announcement was not a press release and, instead, was an investor communication required under German law. (Declaration of Gregory Hamilton ("Hamilton Decl."), ¶ 6, Ex. 2.)

In its claim for declaratory relief, Plaintiff alleges "[t]he ADR provisions of the Agreement are valid and were intended to have meaning." It also alleges "[a] substantial, present and actual controversy exists as to whether Epigenomics can transfer re-license, compromise, sell, assign, or otherwise take action to impair the intellectual property and rights that are subject to the Agreement during the pendency of the ADR process." (Compl. ¶¶ 26-27.) In addition to compensatory damages and attorneys' fees, Plaintiff seeks "[a] declaratory judgment stating that the ADR provisions of the Agreement are valid and enforceable," and an order "enjoining Defendants from transferring, re-licensing, compromising, selling, assigning, or otherwise taking action to impair the intellectual property and rights that are the subject of the Agreement during the pendency of the alternative dispute resolution process[.]" (Prayer for Relief, ¶¶ a., b.)

On April 19, 2019, Defendant removed the case from Alameda County Superior Court and asserted that Epigenomics, Inc. was fraudulently joined. Defendant contends that, as a result of the fraudulent joinder, diversity jurisdiction exists under 28 U.S.C. section 1332 ("Section 1332").

The Court will address additional facts as necessary in the analysis.

3

**ANALYSIS**

**A. Jurisdiction.**

Before the Court can consider the merits of Plaintiff's motion, it must be satisfied that it has jurisdiction over this case. Defendant removed on the basis that Epigenomics, Inc. was fraudulently joined. Plaintiff did not immediately move to remand. Instead, Plaintiff asserted, in a footnote, that the "Court may determine that, contrary to Epigenomics' arguments, there is not complete diversity between the parties." (Mot. at 7 n.2.) Plaintiff did not put forth a substantive argument on the issue of fraudulent joinder. Accordingly, the Court ordered supplemental briefing.

This Court may exercise diversity jurisdiction only where the amount in controversy exceeds $75,000 and there is complete diversity among the parties. 28 U.S.C. § 1332(a). Plaintiff does not dispute the amount in controversy would exceed $75,000. When district courts determine if the parties are completely diverse, they "may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). There is a presumption against fraudulent joinder. Therefore, Defendant bears a "heavy burden" on this issue. *Id.*

One way to demonstrate a defendant has been fraudulently joined is to show that "an individual," or entity, "cannot be liable under any theory." *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (if a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent"). If, however, "there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Grancare*, 889 F.3d at 548 (emphasis in original, internal quotations and citations omitted).

Plaintiff does not allege that Epigenomics, Inc. signed the Agreement, and the record shows it is not a signatory to the Agreement. (Agreement at 27.) Defendant contends that the language of the Agreement belies Plaintiff's assertion that Epigenomics, Inc. is a party to the

4

agreement. However, the preamble states:

> "THIS LICENSE AGREEMENT, dated as of October 27, 2013 (the "Effective Date"), is entered into by and between Epigenomics AG, … (**including all subsidiaries and Affiliates**) (**hereinafter collectively "EPIGENOMICS"**) and BioChain Institute, Inc. … (hereinafter "BioChain"); collectively referred to as the "Parties" and individually as a "Party").

(Agreement at 2 (emphasis in bold added).) Defendant does not dispute that Epigenomics, Inc. is one of its subsidiaries.

The Court looks to Plaintiff's allegations, starting with the breach of contract claim, to see if there is a possibility it could state a claim against Epigenomics, Inc. Plaintiff alleges that "[o]n March 6, 2019, Epigenomics AG [Defendant] breached the Agreement by announcing via press release that it had decided to immediately terminate its licensing agreement with [Plaintiff]. The release referred to royalty arrangements in the Agreement." (Compl. ¶ 33.)

Plaintiff does not include any facts to show that Epigenomics, Inc. took any actions that might constitute a breach of the Agreement. It also does not suggest in its briefing on jurisdiction that there are facts it could or would allege to show that Epigenomics, Inc. took actions that breached the Agreement.[3] *See, e.g., Grancare*, 889 F.3d at 549 (stating that "the district court must consider, as it did in this case, whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend").

The Court next considers Plaintiff's claim for declaratory relief, which is the focus of its brief on jurisdiction. Plaintiff argues that because the Agreement defines "EPIGENOMICS" to mean, collectively, Defendant, its subsidiaries, and its affiliates, both entities owe Plaintiff obligations under the Agreement, including the obligation not to impair the intellectual property

---

[3] Ms. Tian Serri attests she "understood that Epigenomics, Inc. is part of Epigenomics and, in fact, no distinction has ever been made to me between or among business units of Epigenomics." (Tian Serri Decl., ¶ 8.) Ms. Tian Serri also attests that two of Defendant's officers are on the Board of Directors of Epigenomics, Inc. (*Id.* ¶ 9.) Those assertions are not sufficient to establish an alter-ego relationship. Moreover, Plaintiff has not put forth any argument about why disregarding these entities corporate forms, where the parent corporation is alleged to be the primary actor, would lead to an inequitable result. Thus, the Court concludes that Plaintiff has not raised a colorable showing that Epigenomics, Inc. could be held liable on an alter-ego theory.

5

rights while the ADR proceedings are pending. Plaintiff does not allege any facts that suggest Epigenomics, Inc. has taken action to transfer the rights at issue to another entity. Defendant also attests that it, not Epigenomics, Inc., owns the intellectual property rights at issue. (Hamilton Decl., ¶ 12.) Plaintiff has not disputed that evidence. Plaintiff also did not include Epigenomics, Inc. as a party to the ADR proceedings.

The Court recognizes that a defendant must meet a heavy burden to show establish fraudulent joinder. However, on this record, the Court concludes that it would be required to engage in speculation that Plaintiff could "possibly" state a claim for declaratory relief or breach of contract against Epigenomics, Inc.

Accordingly, the Court disregards Epigenomics, Inc. presence in this lawsuit, and it concludes that it has jurisdiction under Section 1332.

**B.     The Court Denies the Motion for a Preliminary Injunction.**

Plaintiff argues that without injunctive relief, the ADR proceedings will be rendered futile. Thus, it asks the Court to enjoin Defendant, its employees, agents, and persons acting in concert with, or on its behalf from: (1) transferring, re-licensing, compromising, selling, assigning, or otherwise taking any action to impair the intellectual property and rights that are subject to the Agreement during the pendency of the" ADR proceedings; and (2) from making any public announcement or other publication concerning the Agreement, including but not limited to the terms and conditions of the Agreement, without Plaintiff's prior written permission, except as may be required by applicable law, regulation, or judicial order (and then only following consultation with Plaintiff). (*See* Dkt. No. 13-5, Plaintiff's Proposed Order.)

**1.     Legal Standard.**

The Court is sitting in diversity and, thus, applies federal procedural law and state substantive law to state law claims. *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938); *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003).[4] Plaintiff has shown that under federal, state,

---

[4] Plaintiff argued the Court should apply the state law standards to evaluate whether injunctive relief is appropriate. The Court does not read the cases on which it relies to reach that conclusion. Rather, those cases suggest that the Court should determine whether an injunction is an available remedy under state law. If it is not, Plaintiff would not be able to prevail on the

6

and German law, the Court has the authority to issue an injunction if one is necessary to preserve the meaningfulness of the ADR proceedings. *See, e.g., Toyo Tire Holdings v. Continental Tire North Amer.*, 609 F.3d 957, 891 (9th Cir. 2010); Cal. Code Civ. P. 1281.8(b); Declaration of Holger Siegwart, ¶¶ 1-3.[5]

The Court will apply the well-established standards for injunctive relief under federal law. *See also Toyo*, 609 F.3d at 981 (stating that a court may enter injunctive relief on arbitrable claims to preserve the "meaningfulness of the arbitration process – provided, of course, that the requirements for granting injunctive relief are otherwise satisfied"). Under those standards, Plaintiff "must establish that [it is] likely to succeed on the merits, that [it is] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Resources Def. Council*, 555 U.S. 7, 20 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Thus, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (quoting *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)).

The Ninth Circuit has stated its "serious questions" sliding scale approach survives *Winter*, whereby a court may grant preliminary injunctive relief if a plaintiff demonstrates "that serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008), *overruled on other grounds by Winter*, 555 U.S. at 22)). When a court applies the "serious questions" test, the plaintiff still must show the likelihood of irreparable harm and that the public interest favors an

---

motion. If it is, then it would be appropriate to evaluate the request under the federal standards. *See, e.g., Kaiser Trading Co. v. Assoc. Metals & Minerals Corp.*, 331 F. Supp. 923, 931 n. 14 (N.D. Cal. 1970).

[5] The Siegwart Declaration is attached as Exhibit 3 to the Huston Declaration.

7

injunction. *Cottrell*, 632 F.3d at 1135.

### 2. Likelihood of Success or Serious Questions.

#### a. Breach of Contract.

In order to state a claim for breach of contract, Plaintiff must show: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff.[6] *Reichert v. General Insurance Co.*, 68 Cal. 2d 822, 830 (1969). The first element is not in dispute, as the parties agree that a contract exists. Plaintiff's argument focuses on the alleged breach. Article 10.2 of the Agreement addresses "Permitted Disclosures," which would appear to cover disclosures that are required by law, and Plaintiff does not refute Defendant's evidence that the announcement at issue was required by law. Defendant, in turn, does not refute Plaintiff's assertion that it did not attempt to obtain Plaintiff's consent to the Announcement. (*See* Agreement, Art. 10.2 (providing for "written notice … to the other Party and sufficient opportunity to object to any such disclosure or to request confidential treatment thereof").)

Although there may be legitimate disputes about whether Defendant's conduct constitutes a breach of the confidentiality provisions, Defendant purported to terminate the Agreement on the basis that Plaintiff did not perform under the agreement. The issue of Plaintiff's performance, or non-performance. is the subject of the ADR proceedings. It also is one of the elements Plaintiff must prove to prevail on its breach of contract claim in this Court. It has not, and the Court concludes Plaintiff has not met its burden to show a likelihood of success on the merits on the breach of contract claim or that serious questions going to the merits of that claim exist.

#### b. Declaratory Relief.

In order to state a claim for declaratory relief under California Code of Civil Procedure section 1060, Plaintiff must allege facts that show: "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a

---

[6] The Court has not considered whether Plaintiff's failure to address German law provides an alternative basis to conclude Plaintiff fails to meet its burden on this *Winter* factor.

8

party." *Brownfield v. Daniel Freeman Mem. Hosp.*, 208 Cal. App. 3d 405, 410 (1989); *cf.* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

As noted, Plaintiff alleges that the "ADR provisions of the Agreement are valid" and seeks a declaratory judgment that they are valid and enforceable. At the hearing, Defendant made clear that it does not contend otherwise, and it is participating in the ADR proceedings. Thus, Plaintiff has not shown there is an actual controversy about the validity or enforceability of Section 16.3. Plaintiff also seeks a declaration about whether or not Defendant can transfer the intellectual property at issue while the ADR proceedings are ongoing. As noted, the issue of whether Defendant's termination is proper is pending in the ADR proceedings, and Plaintiff has not shown, in this court, *why* its interpretation of the Agreement would prevail on the question of whether the intellectual property can be transferred pending resolution of those proceedings.

Accordingly, the Court also concludes Plaintiff has not met its burden to show a likelihood of success on the merits or serious questions on this claim.

### 3. Irreparable Harm.

Under *Winter,* Plaintiff must demonstrate that irreparable harm is likely, not merely possible. 557 U.S. at 22; *see also Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013) ("Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm."). Plaintiff argues that it will suffer irreparable harm in the absence of an injunction because its right to a meaningful arbitration would be thwarted. Under *Toyo*, the Court must make that determination, but only if Plaintiff has shown the other requirements for a preliminary injunction are satisfied. 609 F.3d at 980.

Plaintiff also argues that if Defendant re-licenses the technology, its reputation and good will be injured. Evidence of those types of injuries can support a finding of irreparable harm. *See, e.g, Herb Reed Enters.*, 736 F.3d at 1250; *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*,

9

240 F.3d 832, 841 (9th Cir. 2001).[7] Ms. Tian Serri attests that the Announcement "is hugely damaging to [Plaintiff's] business and market reputation," because it could be interpreted to mean that if BioChain Beijing "commercializes the Septin 9 products they will be infringing on [Defendant's] intellectual property rights." (Tian Serri Decl., ¶ 14.) However, Plaintiff does not accompany the assertions in Ms. Tian Serri's declaration with any evidence that it has suffered any reputational injury or loss of good will, either as a result of the Announcement or as a result of Defendant's decision to terminate the Agreement. *Cf. iCall, Inc. v. Tribair, Inc.*, No. 12-cv-02406-EMC, 2012 WL 5878389, at *14 (N.D. Cal. Nov. 21, 2012) (conclusory declaration of CEO not sufficient to demonstrate plaintiff suffered injury to goodwill or reputation).

"The threat of being driven out of business [also] is sufficient to establish irreparable harm." *Am. Passage Media Corp. v. Cass Commn's, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)). For example, in *hiQ Labs v. LinkedIn Corp.*, on which Plaintiff relies, the plaintiff's business model depended on its ability to access data from the defendant, which was threatening to cut off that access 273 F. Supp. 3d 1099, 1104-05 (N.D. Cal. 2017). In light of that business model, the court reasoned that if the defendant prevailed, the plaintiff simply would go out of business. *Id.* at 1105-06. Therefore, it concluded the plaintiff had shown that irreparable harm was likely. *See also id.* at 1106 n.1 (finding that if plaintiff had to rebuild business model from scratch, that harm would be "comparable to simply going out of business"). In contrast, in *Los Angeles Mem'l Coliseum*, the court concluded there was insufficient evidence to show that the loss of a football team as a tenant would put the plaintiff out of business where other football teams used the stadium and attracted business. 634 F.2d at 1203.

Here, Ms. Tian Serri attests that revenues from the Agreement "account for a large majority of BioChain Beijing's overall revenues." (Tian Serri Decl., ¶ 14.) She further attests that if Defendant entered into a license with a competitor of BioChain Beijing, it is hard for her to see

---

[7] The *Stuhlbarg* court evaluated whether the plaintiff demonstrated a "possibility" of irreparable harm. *See* 240 F.3d at 839-40. That standard was overruled by *Winter*, which requires a showing that irreparable harm is likely.

10

how BioChain Beijing could stay in business. (Tian Serri Decl., ¶ 15.) Ms. Tian Serri also attests that if Defendant

> terminates the license to BioChain Beijing at this stage and relicenses the technologies to BioChain's competitors, the competitors will probably have much lower product price than BioChain Beijing, and this will cause a severe disadvantage to BioChain Beijing in the Chinese market. That, in turn, would have a severe impact on [Plaintiff], in terms of reduction of royalties from BioChain Beijing, BioChain Beijing's failure to repay the technology redevelopment fee of [Plaintiff] and a reduction in sales of raw materials from [Plaintiff] to BioChain Beijing. Such impact would likely also cause us to go out of business.

(*Id.*) Plaintiff has not put forth any evidence relating to its financials or its subsidiary's financials. It has not provided information about the size of the technology redevelopment fee. It also has not put forth any evidence to suggest that the products that are the subject of the Agreement are its sole source of revenue or that its entire business model depends on these products, as was the case in *hiQ*.

The Court has no basis to doubt Ms. Tian Serri's credibility. However, it concludes that Plaintiff has not met its burden to show an enterprise-threatening, and therefore irreparable, injury is likely rather than speculative or conjectural. *Cf. Am. Passage Media*, 750 F.2d at 1474 (finding statements from plaintiff's president about large losses sustained, standing alone, was insufficient to show it was threatened with extinction).

### 4. Balance of Equities and Public Interest.

The crux of the dispute in the ADR Proceedings is whether Defendant properly terminated the Agreement, which provides that the intellectual property rights revert to it on termination. (Agreement, Art. 12.5.) There is no evidence in the record as to how long those proceedings may take, and Defendant argues it would be deprived of significant revenue and might permanently lose licensing opportunities during the process. (Hamilton Decl., ¶ 10.) The ADR proceedings also have been pending for more than sixty days, after which time Plaintiff could have initiated arbitration proceedings and asked for interim relief in that venue. On balance, the Court cannot say the balance of hardships tips sharply in Plaintiff's favor.

The Court also has considered the public interest, which in this case involves issues such

as access to medical care, enforcement of written agreements, and preserving the meaningfulness of alternative dispute resolution procedures. On balance, the Court concludes the public interest is neutral and does not weigh in either party's favor.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for preliminary injunction. Nothing in this ruling should be construed to prevent Plaintiff from seeking interim relief when and if arbitration proceedings are initiated before the WIPO. The parties are scheduled to appear on August 16, 2019 for an initial case management conference. That hearing and deadlines in this case, whether set by stipulation or by Court order, remain in effect pending further order of the Court.

**IT IS SO ORDERED.**

Dated: June 12, 2019

_____
JEFFREY S. WHITE
United States District Judge